In the Matter of Robert J. WARD and Nancy Ward, d/b/a London Court, Debtors.

Bankruptcy No. 80–392–C.

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Aug. 28, 1980.

Chris C. Larimore, Bradenton, Fla., trustee.

Allan C. Watkins, Tampa, Fla., for debtors.

Jary Nixon, Tampa, Fla., for Obj. Cred.

## ORDER ON CREDITOR'S OBJECTION TO PLAN AND CONFIRMATION OF PLAN

ALEXANDER L. PASKAY, Chief Bankruptcy Judge.

THIS IS a Chapter 13 proceeding filed by Robert J. Ward and his wife, Nancy Ward, who seek an adjustment of their debts under this Chapter. Their right to relief is challenged by Neptune U.S.A., Ltd. (Neptune) on the grounds that the liquidation of assets of these two Debtors would provide a greater return to creditors than what is offered to them under the Plan, submitted by the Debtors and, therefore, the Plan, as filed cannot be confirmed by virtue of § 1325(a)(4). Most importantly, the creditor also challenges the Debtors' eligibility to seek relief under this Chapter on the ground that they are, in fact, partners in a partnership and do not seek a relief as two individuals, but as partners on behalf of a partnership. Accordingly, Neptune contends that under § 109(e) the partnership is not eligible for relief under this Chapter.

Considering this last challenge first, this Court, after having heard evidence presented in support of the objection, is satisfied that this contention of Neptune is without merit and should be rejected for the following reasons:

Robert J. Ward and his wife, Nancy Ward filed their petition for relief under this Chapter on March 28, 1980. According to the caption of their petition, their principal place of business is within this district and they are doing business as "London Court", a retail establishment located in Tampa, Florida. The record further reveals that they are married; that there is no written partnership agreement between them; that the occupational license for the business is issued to Robert J. Ward only; that the lease for the premises of the business was signed only by Robert J. Ward; that they did not file a partnership tax return, but merely a joint tax return; and all decisions in the business, such as setting prices and obtaining automobiles through leases for the business, have been made by Robert J. Ward. The record further reveals that Nancy Ward, while working fulltime in the business, does not perform any managerial functions; does not receive a salary; and while she is a designated signatory on the bank account maintained under the name of "London Court", so is her daughter who has absolutely nothing to do with the operation of this business but was made a signatory for mere convenience and to be used only in the event her parents are not able to draw checks, either due to absence from the city or for other reasons.

Considering the foregoing, this Court is satisfied that the proof presented in support of this particular objection is legally insufficient to establish the existence of a partnership composed of Robert J. Ward and his wife Nancy Ward.

■■■ One of the chief characteristics of a partnership relationship is that it is created only by a voluntary contract between the parties. Whether express or implied, a contract is essential to the formation of a partnership with some exceptions not relevant in this case. *Stephens v. Orman*, 10 Fla. 9 (1862); *Reed v. Beales*, 77 Fla. 801, 82 So. 234 (1919). Written articles are unnecessary to create a partnership, and a contract to create a partnership is equally valid even if oral. *Nahmod v. Nelson*, 147 Fla. 564, 3 So.2d 162 (1941). Of course, if there is a formal partnership agreement, there is no difficulty to determine the existence of a partnership. On the other hand, when there is no written agreement, the courts always have had difficulty in laying down tests by which to determine whether a partnership exists. *59 Am. Jur. Partnership, § 39*. Each case must be decided on its own peculiar facts. In determining whether an actual partnership relationship exists, the most important test is whether or not there was an intention that the parties are to be partners. *Johnston v. Eichelberger*, 13 Fla. 230 (1938). While there is no legal prohibition to create a partnership between a husband and wife, the mere fact that a wife participates in the conduct of a business does not necessarily establish a partnership between a husband and wife unless there exists some other indicia of a partnership.

The factors usually considered by courts in determining the existence of a partnership are: A contribution by each of the parties to the capital of the business. *Uhrig v. Redding*, 150 Fla. 480, 8 So.2d 4 (1942); an agreement to share in the profits and losses and to share the assets and liabilities of the business. All of the above if present may indicate the existence of a partnership. *Allen v. Hawley*, 6 Fla. 142 (1855). It should be pointed out that none of these factors are conclusive to establish a partnership between the parties, and the Court must consider the totality of all relevant facts and circumstances. As noted earlier, as between persons alleged to be partners, a true partnership relationship depends on a contract, express or implied, between the parties to the relationship evidencing the parties' intention to become partners. *24 Fla. Jur. Partnership, § 33.*

As to third persons, however, there may be a partnership liability arising out of the parties' conduct under circumstances which may establish a partnership relationship even though there is no contractual undertaking, express or implied, between the parties themselves, and even though they may have expressed their intent, though unknown to third parties, not to become partners. Thus, where parties hold themselves out to a single individual or to the public generally as partners in a non-existent partnership, they may in fact be bound for the business debts to third persons who deal with them in that apparent relationship. The basis of this liability is, of course, the doctrine of estoppel. *Webster v. Clark*, 34 Fla. 637, 16 So. 601 (1894).

Applying the foregoing principles to the facts as developed in the present case, this Court is satisfied that there was no express or implied agreement between the husband and wife to create a partnership, nor did the parties hold out to the public at large or to individual third persons that they were operating their business as a partnership. The objecting creditor urges, however, that since Nancy Ward worked in the business without compensation and in their schedules filed in these proceedings, they listed debts of the business as joint debts, there must have been an agreement between themselves to share in the profits and losses of their business, therefore, this alone would be sufficient to establish the existence of a partnership between them. In addition, the objecting creditor points out that she had the power to sign checks on the business account which, according to the objecting creditor, is a further indication that the business was operated as a partnership.

While it is true that the schedules were filed by the Debtors under oath, it is evident that classification of the liabilities on their schedules were made by their attorney who scheduled them as joint obligations out of precaution. Standing alone, joint scheduling carries very little persuasive force to establish that there was an understanding between them that they would share in the profits and the losses equally and they were, in fact, jointly liable to the trade creditors of the business. On the contrary, there is no evidence in this record that Mrs. Ward is liable at all to trade creditors. The fact that she was a signatory on the bank account is equally without significance. To accept this fact as conclusive as evidence of a partnership would make the conclusion equally inescapable that the daughter was also a partner, a proposition clearly far fetched in the light of the undisputed facts that she had absolutely nothing to do with the operation of the business.

In light of the foregoing, it is evident that the record falls woefully short of establishing that the business known as London Court, is, in fact, a business operated by a partnership and not by Robert J. Ward alone, as a sole proprietor.

The issue of eligibility raised by Neptune is, of course, ever present in the case of a small business operated by husband and wife, the so-called "mom and pop" business operation. This problem was not ignored by Congress. This is abundantly clear from the legislative history of Sec. 109(a). The House Report's comments on this section states that the eligibility for relief under Chapter 13 for a married couple who oper-

ate a small business must be determined by the facts of each case. The issue will be whether the assets of the business are for the benefit of all creditors of the debtors or only for those creditors of the business and whether the business assets may be subject to a Chapter 13 proceeding. In this connection one should not overlook the fact that the eligibility Section of the Code was designed to follow current law which permitted courts in the past to adjudicate a partnership by estoppel based on the conduct of the individuals jointly operating a business. Consequently the Code without doubt permits a Chapter 13 debtor from subjecting the assets of the partnership agreement, formal or informal, when there is a separate entity and such entity would not be eligible for relief, and its assets would be exempt from a case under this Chapter. *House Report No. 95–595, 95th Cong. 1st Sess. (1977) 318–20,* 1978 U.S.Code Cong. & Admin.News, p. 5787.

This leaves for consideration the plan submitted by them and particularly whether or not this plan may be confirmed as one which meets the Code's requirements for confirmation. Sec. 1325 especially Sub-Section (3) of this Section which requires that the Court finds that the plan has been proposed in "good faith". This requirement is subject to extensive discussion and is one of the most litigated issues in cases filed under this chapter.

There is no definition furnished by the Code for the term "good faith". Contrary to some beliefs "good faith" was not designed by Congress to be synonymous or a substitute for the term "best effort". This is clear from the legislative history of the Code and most importantly from the legislative history of the so–called Technical Amendment Bill passed by the Senate, S. 655. This Bill is still pending in the House, which would require debtors to establish that the plan submitted represents the "best effort" of the Debtor. Be that as it may, the vast majority of cases which have construed the term "good faith" have held that a debtor must deal fairly with creditors and a plan which does not propose to pay to all creditors a meaningful and sub-stantial amount consonant with the debtor's financial ability to pay is a plan not filed in "good faith" and cannot obtain confirmation. With these remarks in mind, this Court is constrained to conclude that this plan was not filed in "good faith" for the following reasons:

■ First, this Court is in total darkness as to the regularity of income and the amount of the disposable income, of these Debtors. More importantly, the plan offers to pay out $100 per month for six months to be distributed among the creditors holding claims against the Debtors in excess of $75,-000. This is certainly not an honest and sincere attempt to deal fairly with creditors and cannot, by any stretch of imagination, be concluded to be a substantial and meaningful payment which would pass muster under § 1325(a)(3) of the Bankruptcy Code. *In re Montano,* 4 B.R. 535, 6 BCD 487 (Bkrtcy.D.D.C.1980); *In re Hobday,* 4 B.R. 417, 6 BCD 469 (Bkrtcy.N.D.Ohio 1980); *In re Murallo,* 4 B.R. 666, 6 BCD 478 (Bkrtcy. D.Conn.1980); *In re Bellgraph,* 4 B.R. 421, 6 BCD 480 (Bkrtcy.W.D.N.Y.1980); *In re White,* 4 B.R. 349, 6 BCD 459 (Bkrtcy.D.D. Va.1980); *In re Hall,* 4 B.R. 341, 6 BCD 476 (Bkrtcy.E.D.Va.1980); *In re Rayburn,* 4 B.R. 624, 6 BCD 453 (M.D.Ga.1980).

In light of the foregoing, as stated earlier this Court is satisfied that this Plan was not filed in "good faith" as required by § 1325(a)(3) and for this reason, it cannot be confirmed.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the creditor's challenge on the eligibility of these Debtors to seek relief under Chapter 13 of the Bankruptcy Code be, and the same hereby is, overruled. It is further,

ORDERED, ADJUDGED AND DE-CREED that the Application to Confirm the Plan as filed be, and the same hereby is, denied without prejudice with leave granted to the Debtors to file an amended plan within 15 days from the date of entry of this Order, if they so deem it to be advised.